USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 1-29-18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| -against- | 17-cr-00087 (ALC) |
| GEORGE DOUMANIS ET AL., | **OPINION AND ORDER** |
| Defendant. | |

**ANDREW L. CARTER, JR., United States District Judge:**

Before this Court are Defendant's motions to dismiss the indictment and to preclude evidence derived from Defendant's conversations with Government officials. For the reasons that follow, Defendant's motions are DENIED.

## BACKGROUND

On February 7, 2017, a Grand Jury issued an indictment charging Defendant Danny Pratte, along with George Doumanis and Emanuel Panetalkis, with (1) conspiracy to commit securities fraud, (2) securities fraud, (3) conspiracy to commit wire and mail fraud, and (4) wire fraud. The indictment alleges that the defendants perpetrated a scheme to defraud investors to purchase shares of Terminus Energy, Inc., a company founded by Defendant.

Both parties agree that Defendant spoke with Government agents during the course of their investigation. First, beginning around May 28, 2014, Defendant voluntarily spoke with FBI agents. During these conversations, he waived his right to counsel. Second, beginning around February 24, 2015, Defendant and his attorney met with federal prosecutors. During the meetings with prosecutors, Defendant and his attorney signed proffer agreements.

On November 29, 2017, Defendant filed a motion to prevent the Government from using information obtained through proffer sessions against him. ECF No. 29 ("Def Proffer Motion").

1

On November 30, 2017, Defendant filed a motion to dismiss the indictment based on an implicit Non-Prosecution Agreement and Outrageous Government Conduct. ECF Nos. 30-31 ("Motion to Dismiss").

The Government responded to Defendant's motions in one filing on December 13, 2017. ECF No. 34 ("Gov Mem"). Defendant filed a reply brief on December 21, 2017. ECF No. 35. Accordingly, the Court considers these motions fully briefed.

## DISCUSSION

### I. <u>Motion to Dismiss</u>

#### A. Non-Prosecution Agreement

Defendant alleges that the indictment must be dismissed because the Government implicitly entered into an oral Non-Prosecution Agreement, or "NPA," with him.

Courts interpret agreements for various levels of immunity from prosecution "according to principles of contract law." *United States v. Aleman*, 286 F.3d 86, 89 (2d Cir. 2002). While courts have "considered unwritten immunity agreements," such agreements are discouraged. *Id.* at 90. This is because "[a]n oral agreement greatly increases the potential for disputes such as this [case] presents, a failure to agree on the existence, let alone the terms, of the deal." *Id.* Thus with oral agreements, a court "must consider the possibility that immunity discussions . . . never progressed to a meeting of the minds and formation of an enforceable bargain." *Id.*

Nonetheless, "even if no actual agreement is determined to exist, according to principles of promissory estoppel, the Government can be held to any clear and unambiguous promise of immunity it makes to a defendant, upon which the defendant reasonably relied to his or her detriment." *United States v. Sattar*, No. 02-395, 2003 WL 22510398, at *2 (S.D.N.Y. Nov. 5,

2

2003). Defendant bears the burden of proving the existence of any such agreement. *See United States v. Rosario*, 237 F. Supp. 2d 242, 245 (E.D.N.Y. 2002) (collecting cases).

Here, Defendant engaged in two types of conversations with Government officials. The alleged facts do not support the existence of a NPA in either context.

First, beginning around May 28, 2014 Defendant spoke with FBI agents upon waiving his right to counsel. As an initial matter, it is unclear whether FBI agents even have the power to enter into binding agreements not to prosecute. *See Arriaga v. United States*, No. 08-4388, 2009 WL 890652, at *1 (E.D.N.Y. Feb. 26, 2009) (collecting cases from other jurisdictions). Regardless, Defendant provides no affidavits that attest to the formation of an agreement not to prosecute. All Defendant produces are four undated, unattributed statements that Defendant "had no skin in this game;" "was a victim, too;" "had nothing to worry about;" and that there was no "criminal intent" on his part. Motion to Dismiss at 4. Defendant does not provide context for these alleged statements nor explain how these comments, if true, give rise to an inference of an agreement not to prosecute.

Second, in February 2015 Defendant retained counsel. Beginning around February 24, 2015, Defendant and his attorney entered into discussions with federal prosecutors. Defendant submits no affidavits that attest to the formation of an agreement not to prosecute during these conversations. To the contrary, at each such meeting, Defendant and his attorney signed a Proffer Agreement that explicitly stated, "THIS IS NOT A COOPERATION AGREEMENT." *See* ECF No. 34-2, Gov. Exh. B ("Proffer Agreement").

Accordingly, Defendant's motion to dismiss on the basis of an implied NPA is DENIED.

## B. Outrageous Government Conduct

Defendant next contends that the indictment must be dismissed due to outrageous government conduct.

"Government involvement in a crime may in theory become so excessive that it violates due process and requires the dismissal of charges against a defendant." *United States v. Al Kassar*, 660 F.3d 108, 121 (2d Cir. 2011); *see also United States v. Russell*, 411 U.S. 423, 431-32 (1973). Claims of outrageous government conduct are "taken seriously because ensuring that the government does not trample in an unconscionable manner on individual dignity is a bedrock duty of judicial officers." *United States v. Schmidt*, 105 F.3d 82, 91 (2d Cir. 1997).

However, "the burden of establishing outrageous investigatory conduct is very heavy." *United States v. Rahman*, 189 F.3d 88, 131 (2d Cir. 1999). The defendant "must show that the government's conduct is 'so outrageous that common notions of fairness and decency would be offended were judicial processes invoked to obtain a conviction.'" *Al Kassar*, 660 F.3d at 121 (quoting *Schmidt*, 105 F.3d at 91). Generally, "the government's involvement in a crime must involve either coercion or a violation of the defendant's person." *Id.* "It does not suffice to show that the government created the opportunity for the offense, even if the government's ploy is elaborate and the engagement with the defendant is extensive." *Id.*

Here, Defendant essentially argues that the Government engaged in outrageous conduct by insinuating that Defendant was not at risk of prosecution and then leading him to provide the evidence that led to his indictment. As discussed above, Defendant has not shown the existence of any agreement not to prosecute. Further, the alleged Government tactics here do not "shock the conscience" or violate fundamental fairness. *See United States v. Bout*, 731 F.3d 233, 238 (2d Cir. 2013); *United States v. Colon*, 71 F. Supp. 3d 269, 275 (D. Conn. 2014).

Accordingly, Defendant's motion to dismiss for outrageous government conduct is DENIED.

## II. Motion to Determine Extent of Proffer and Motion in Limine

Defendant argues that evidence obtained while he was aiding the Government must be excluded because it is inadmissible either (1) under Federal Rule of Evidence 410, (2) as part of the proffer process, or (3) under *Miranda v. Arizona*.

### A. Federal Rule of Evidence 410

Under Federal Rule of Evidence 410, "a statement made during plea discussions with an attorney for the prosecuting authority" is "not admissible against the defendant who . . . participated in the plea discussions."

Here, Rule 410 is inapplicable. First, Rule 410 does not bar conversations with FBI agents in the course of an investigation. Defendant has provided no factual basis to determine that FBI agents were acting as "prosecuting authorities" or that statements were made in the course of plea discussions.

Second, Rule 410 does not bar statements that Defendant made to federal prosecutors during proffer sessions. As discussed further below, Defendant and his attorney signed a proffer agreement providing that Defendant "shall assert no claim under . . . Rule 410 of the Federal Rules of Evidence . . . that such statements or any leads therefrom should be suppressed." Proffer Agreement ¶ 5.

### B. Proffer

"Ordinarily, statements made by a defendant during plea negotiations, including proffer sessions, are inadmissible at trial." *United States v. Velez*, 354 F.3d 190, 194 (2d Cir. 2004) (citing Fed. R. Evid. 410). However, a defendant can waive the protections of Rule 410 "as long

5

as there is no 'affirmative indication that the agreement [to waive] was entered into unknowingly or involuntarily.'" *Id.* at 195 (quoting *United States v. Mezzanatto*, 513 U.S. 196, 210 (1995)).

Here, Defendant and his attorney signed a Proffer Agreement waiving Defendant's rights to raise claims under Rule 410. *See* Proffer Agreement ¶ 5. There is no affirmative indication that Defendant's waiver of his Rule 410 rights was involuntary or unknowing. Further, insofar as Defendant contests the use of his statements in the Government's case-in-chief or in connection with sentencing proceedings, the Agreement limits such use. *See id.* ¶ 2.

### C. *Miranda v. Arizona*

*Miranda v. Arizona*'s warning requirements only apply during "custodial interrogation." *United States v. Newton*, 369 F.3d 659, 669 (2d Cir. 2004) (citing *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Oregon v. Mathiason*, 429 U.S. 492, 494 (1977). Defendant does not present factual allegations supporting a finding that he was subjected to custodial interrogation. Nevertheless, the Government asserts that Defendant was informed of his right to counsel and that he waived this right. Gov. Mem. at 10. Defendant does not contest this assertion.

For the foregoing reasons, Defendant's motion to dismiss, motion to determine the extent of the proffer, and motion in limine are DENIED. The clerk of court is respectfully requested to terminate the motions at ECF Nos. 29 and 30.

**SO ORDERED.**

Dated: January 29, 2018
New York, New York

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**